Good morning, Your Honors. My name is Edward Robbins. I'm the lawyer for the taxpayer Robert Gosnell, the appellant in this matter. Let me hit the punchline first. This case is governed by Napoleolo out of this circuit. We're done. It falls within it. And I think the disconnect between the government's argument and my argument is that the government seems to think that just because these sales and exchanges took place through PTRPN-1, that's the first-level partnership, that that somehow takes it out of Napoleolo, and I suggest it does not. Napoleolo would have come out the same way if Michael Napoleolo had a partnership that he sold his stock through. It would have made a difference, because that partnership is not the TEFRA partnership in the case. Here, the TEFRA partnership is three tiers away. It's acquisitions. We're calling that by the short name acquisitions. Acquisitions got the TEFRA examination. Acquisitions got the notice of final partnership administrative adjustment, the so-called FPAA. Acquisitions defaulted on the FPAA, which means the FPAA is conclusively determined for every partnership item referenced in that FPAA. The one thing that you know, I read all this, and there's quite a complicated structure, of course, and questions, but the one thing that seemed not uncomplicated I would appreciate your comment on, and that is Mr. Gosnell's concessions in his notice of election to go to the settlement initiative about these amounts, and there's a taxpayer attestation attached to that. Doesn't that just put it on the record? That's an excellent observation. I think that that's the best argument the government has here, is that basically Gosnell signed off on these numbers. Correct. Yes. I mean, he signed off on the numbers, so, hey, we're done. Boom, we're going to assess. That's a determination at the partner level. Going to Gosnell and saying, hey, Bob, you like these numbers? Yeah, they look okay to me. That's a determination at the partner level. It's exactly what we're talking about. And if you look at ---- Why don't we stop there and kind of make sure I'm following your argument? Sure. If a number is a number is a number, why does it matter? Because the code says it does. Well, but it matters if there has to be a determination, there has to be a notice. But on that point, you're saying that even though he affirmed that these were the numbers, you have to treat that as an affirmation at the partner level or a determination at the partner level?  And, and. Tell me why that is. Just make sure I understand. Well, because when you have a ---- when you are entitled to a statutory notice of deficiency, as we contend we are here, and Philadelphia, the Philadelphia reading case, I think, goes into this in some detail, it doesn't make any difference what you say. You're entitled to a statutory notice of deficiency. I thought Olson rejected that very argument. Well, that may be. I found Olson quite persuasive, so maybe you could explain why that court got it wrong. Well, I think the court, Philadelphia is correct, and the views to the contrary are incorrect because the Internal Revenue Code is a very unforgiving code. You have to do it right and you have to do it the way the code says you do it. And if you don't do it, there are typically sanctions built in that punish you for not doing it correctly. Normally, the punishment is directed at the taxpayer who has done a foot fault somewhere and blown a statute or not filled out a form properly. And when that happens, too bad, taxpayer, you lose. In this case, we have the rarer occurrence of a foot fault by the government. The statutory notice of deficiency is required, period. Why don't you go back to Olson, because you haven't responded. Well, Olson's wrong. Oh, okay. Well, that's sort of why. No, I'm sorry. I'm waiting. Olson's wrong. I mean, if you're entitled to a statutory notice of deficiency, you're entitled to a statutory notice of deficiency. There are certain exceptions in the code, such as you consent to assessment or do a closing agreement or something like that, that take you out of that regimen. But normally, if you're entitled to a statutory notice of deficiency, it doesn't make any difference what the taxpayer says. Your argument in your brief was that, not that Olson was wrong, but that there, the settlement had been finalized. And somehow this case was different because the settlement fell apart. Well, no. Olson, the theme of Olson was that because there was an agreement, you didn't get your stat notice in the TEFRA context that we're talking about here. It just so happens that there was a closing agreement in Olson which takes you out of the deficiency notice procedures. So, I mean, but they didn't focus. That wasn't the way I read Olson. They were going off on the agreement aspect of what went on between the taxpayer and the government. My point is, unless you formalize it under the code with a signed waiver or a signed closing agreement or something that's specified in the code, you're entitled to your statutory notice of deficiency, period. So where you have something that the taxpayer attests to and, in fact, under perjury, where does it – where do you get the rationale that you have to have converted it to something further? Is that in the code? I mean, where would I look for that? Or is that just a fact? Yeah. It would be 6212, 6213, where they set out the exceptions to the deficiency notice procedures. And there are various exceptions broken out there, one of which is a signed closing agreement, but the closing agreement has to be signed by both parties. So a unilateral statement by the taxpayer as to what the number is in that context won't work. Now, what it could – where it would work, and I'll point this out, and you may find this useful, I hope not, the taxpayer can unilaterally waive assessment, okay, by a signed document in writing. Usually it's on a Form 870. It could be on a signed 4549. If you look in the exhibits, there are some 4549 forms there. I think they have a space for the signature of the taxpayer. Normally they do. Sometimes they don't. But you could sign that as a taxpayer and waive the requirement of a statutory notice of deficiency and go directly to assessment. But you have to do it according to the code. And a letter from the taxpayer's lawyer saying, yeah, we like these numbers or, yeah, we don't have any problem with these numbers, doesn't do it. You said to look to 6212 and 6213? Yes. Okay. And that's what sets out the exceptions for notice of deficiency? Yes. Yes. Where was I? Oh, I just wanted to point out, I really don't think there should be any dispute that you need in order to figure out the numbers. You've got to look at the partner level. And if there's any doubt of that, take a look at Exhibit 13 to the Stipulation of Facts. It said Excerpt of Record 388. And that's the government's calculation. I looked at it. I could not make sense of it at all. And so I'm with you that if, in fact, you needed to go through all these elaborate calculations, certainly that would be at the partner level. I guess where I thought your argument fell apart was that once the numbers are undisputed, it really does become just a matter of striking out the... Yes. I understand that concept. I'm suggesting, as I have up to this point, it's not correct. I think that's what the government's strongest argument. I don't think they have any legs at all in the fact that if you're going to do it, you have to look at the partner level. That's what I'm saying. You don't even need to go down there. Forget that. That seems clear. So that's where we are. And I just fold the Court back to the Code. If it's not exactly the way the Code wants it, it doesn't work. Okay. You started out by pointing us to our decision, and I don't know how to say it. Is it not? Napoliello? I'm not sure how to say it either, but that's what I said. But I guess I thought the way that's the case where we distinguish the district court's decision in your case. Yes. Right? I thought the way we distinguished it really helped the government quite a bit. Is there something that you see? You sort of said that we start and end with Napoliello, but I would have thought that helps the government, not you. Well, it certainly helped the government and Napoliello. Well, let me address that specifically since I've actually got that broken out here. And let me tee it up with a statement from the government's brief, page 33 of the brief, where they're responding to my comment that all Senate boss cases get a stat notice, which is probably something of an overstatement because I have since found one Senate boss case that we had in our inventory at the office that didn't need one because there was a straight line between the loss and the 1040. Very rare that happens. Here's what they say. Quote, To be sure, in some Senate boss cases, the relevant loss or reduced gain occurs at the partner level. In those cases, the partner typically sells a partnership interest or an asset he received on withdrawing from the partnership and the partner's inflated outside basis is used to create a loss or reduce the gain upon the sale of this asset. See Napoliello. On affected items, notice of deficiency is typically required in those circumstances. That's correct. And in Napoliello, they said you needed an affected item, statutory notice of deficiency, because partner level determinations were required to determine their, the identity of the stock sold, the portion of the stock sold, the holding period for the stock and the current period of gain or loss. In this case. In this case, the same thing is required. Because remember, you. No, we said. We said this case, your case, is different because none of that's required because we know what the numbers are. You stipulated to them. Not you, but your Honor. Well, that's the argument we've been talking about already. Oh, clearly the district court went off on the theory your Honor's been talking about, which is if you've agreed to the numbers during the course of the examination, you're done. No, and I guess I'm suggesting that didn't we sort of suggest that we were in agreement with that, that rationale? I don't know that that was, I don't know that that was the subject of any kind of in-depth analysis, and, you know, if that's the case, that's just wrong. Okay? That's all I can say. It's wrong. So I won't bore you with why we have to go through the partner level determination. I will say there is a sale here. There's two sales. There's the sale of the Canadian currency with this ridiculous inflated basis when they exchange it for dollars. That's one sale. The other sale is when PTPNP-1 walks away from the deal and leaves behind the resort and all the debt. That's an exchange. That's a sale. And so you have to go through all that analysis with, you know, what's the basis, what do you have in it, what's real, what's not real. It's, you know, it's a mess. Roberts, can I ask you this? I'm sorry. I mean, you – am I right in understanding your argument to be of the most hypertechnical you could get? In other words, you're not complaining that by not issuing the notice of deficiency you were – your client was deprived of some procedural defense or some other substantive defense he could have raised in that form that he couldn't – that he can't raise in the district court form, right? Well, no, I am complaining of that. I don't – had I gotten my hands on an effective item of statutory notice of deficiency, there's no telling what I could have done with that. The government – It doesn't help us much. I mean, it's concrete. No. I'm not able to attack the merits of the disallowance of the son of boss transaction because that's already been determined. I have live penalty issues that are still in play in the Petaluma case in the D.C. circuit. I have live procedural issues that they don't know anything because they – they had foot faults in the way they set the thing up so that they've blown the statute in another context. There are procedural arguments that are alive. The easy one to see is you can look at the Petaluma penalty issue. That one's in play right now. D.C. circuit has agreed with me, but it's put back in front of them after going back and forth for a while. But, no, I would expect to be back in tax court with more procedural arguments to try to defeat this assessment. And I didn't get that chance because I didn't get my notice. And I've blown all my time. I've got 21 seconds left. All right. Let's hear from the government. May it please the Court. I'm Joan Oppenheimer, attorney for the United States. The government – there are two alternate rationales. Can you maybe just lower the mic a little because it's a little too loud for me now. There are two alternate rationales on which this Court can affirm the decision of the Court below. The first is the rationale on which the Court relied, namely that the taxpayer had conceded all the numbers in issue and that, therefore, there are no factual determinations to be made. The second rationale is that no notice of deficiency was required under TEPRA partnership procedure. As this Court has realized when the settlement was being contemplated, the Form 906 that the taxpayer submitted contained all the relevant numbers. When the settlement fell through because the taxpayer failed to fully pay the entire amount that he owed, the taxpayers represented conceded that we don't contest the tax liability. The only thing in issue is the amount of the penalty, namely the 40 percent penalty, which he didn't want to pay. Ginsburg. His argument is, okay, well, they put in the numbers for the settlement. Things ultimately didn't pan out. But you still have to fit that document into the exceptions for notice of deficiency. So what's the government's position? First of all, 6212 and 6213 have no application in TEPRA partnership proceedings. Those are provisions that deal with notices of deficiency in normal circumstance. The relevant section in TEPRA partnership proceeding is section 6230 of the code. 6230A1 says, except as provided in paragraph 2 or 3 of the section, subchapter B, which this chapter shall not apply to the assessment or collection of any computational adjustment. So the general rule when you're dealing with TEPRA partnerships is that this whole notice of deficiency procedure, namely 6212 and 6213, is inapplicable. There are exceptions. 6230A2A provides that subchapter B shall apply to any deficiency attributable to affected items which require partner-level determinations other than penalties or additions to tax, which that relate to adjustments to partnership items. So the question we have here is, does this case involve an affected item which requires partner-level determination? If it does, a notice of deficiency was required. If it does not, a notice of deficiency is not required. I would say that a notice of deficiency was not required because there are no affected items which require partner-level determinations. This case is very different from Napoli. Can you just move the mic a little bit away from me? You're speaking so loudly right now. That's going to be perfect. Is there anything you would like me to repeat? No, no, no. It's just it's a little hard for me to, because it kind of echoes off of these walls. Okay. Can I ask you this? If we look at Exhibit 13, as your opponent pointed us to, if all of those calculations really were necessary to figure out this guy's ultimate tax liability, you would concede that that would involve partner-level determination? No. So if you didn't have the stipulated numbers, you don't think a notice of deficiency would have had to have issued here? No. Why not? Because in a nutshell, the losses occurred at the partnership level. Partnership losses are under the regulation defined as partnership item. Under 6230A, 2A, these are not, a partnership item is not an affected item. Napolilo was very different. In Napolilo, the loss occurred at the partner level. The partner withdrew from the partnership. He received certain stock. He then sold the stock. I think he claimed a loss. So his loss occurred at the partner level. In other words, his sale, the amount he realized from the sale of stock would be considered an affected item. And therefore, it was an affected item. It was an affected item that required partner-level determination, such as how much did he receive when he sold the stock, how much stock did he sell, was his holding period short-term or long-term. In this case, the losses occurred at the partnership level. The Treasury regulates, and there were partnership losses. But they did occur at the partnership level. But, I mean, this taxpayer is several levels removed from that. And so I would, I could follow your argument if there was just the one level. But as I understand it, those two intermediary partnerships complicate matters quite a bit. Well, not really. It simply, I mean, it may make the computation more complicated, but the fact that a computation is complex doesn't change the end result. The regulations define a partnership loss as a partnership item. A computational adjustment is defined as the change in tax liability of a partner, of a partner which properly reflects the treatment of a partnership item. So take, suppose PT was actually, so in a case where a partnership incurs a loss, in that case, the losses, either the FPA becomes final as here because no one challenges it or it's challenged and say the government wins. So then you know that the partnership item is disallowed. You are going to have, in any case, an adjustment on the partner's return because, you know, what is the taxpayer's proportionate share of the partnership? That is true in this case as well. He is an indirect partner in the partnership. He is bound by the determinations at the partnership level, just as if he was a direct partner. And in both of these cases, acquisitions, the partner, the partnership to whom the FPA was issued was the one that was involved in the transactions for which the taxpayer claimed the loss. There were two losses in issue here. The first loss was the loss claimed in 2000. It was a short-term capital loss that resulted from acquisitions closing the options transaction prior to its termination date. So that was a loss that was actually claimed on acquisitions return. So the fact that there was no issue, no partnership issue, no FPA issue to this P-T partnership is entirely irrelevant because the loss occurred. Acquisitions claimed the loss. Roberts. But aren't there going to be separate outside basis determinations you have to make for those two intermediary partnerships? No. That's entirely a smokescreen the taxpayer throws up. What the taxpayer claimed on his 2000 return is his proportionate share of the loss claimed on acquisitions 2000 return. All you need to know is the amount of the loss that was disallowed and taxpayer's proportionate, you know, taxpayer's percentage interest in the partnership. In the second case, the 2000. You're saying that the intermediate levels don't matter to what ultimately the percentage is and the loss calculation on that. In this particular case, they don't. In the second tax year, which is the 2001 tax year, you have the long-term capital loss. But acquisitions was participated in the relevant transaction that gave rise to the loss. What happened for the second loss is that P-T, the P-T partnership in which the taxpayer was a partner, exchanged a 6% interest in holdings to acquisitions. In return, it received Canadian dollars. So the result of that transaction, if it was upheld, was that the basis, that P-T's basis in holdings would be transmitted to the Canadian dollars. Then the P-T partnership exchanged Canadian dollars for U.S. dollars, and that gave rise to the loss. But acquisitions was a part of this transaction because it was sort of like a two-step transaction. The P-T partnership exchanged a 6% interest in the second-tier partnership, which was holdings, and acquisitions in return paid the P-T partnership the relevant percentage of Canadian dollars. The FPAW that is addressed to acquisitions in 2001 says acquisitions is a sham and is disregarded, and all its transactions are disregarded. So then once you disregard this transaction, which the FPAW does, and the FPAW was unchallenged, if you disregard this transaction, there was no loss-generating transaction from which P-T could claim its long-term capital loss, which then flowed through to the partner. Let me ask you more of a procedural question because this statement that he signs, which is this notice of election to participate in the settlement initiative. Correct. It's signed under penalty of perjury, and it's got the numbers in there. So I take it your position is game over. These are the numbers. We just run them through the computer, so to speak. And that was what happened. He's saying, however, I think two things, as I heard it. One, well, what this does is it sort of unwittingly deprives him of a notice of deficiency, and had he gotten that, then there may have been other procedural challenges that could have been on the table. But without the notice of deficiency, he just ends up with the assessment. So the two related questions are, I mean, is it a fair notice to the taxpayer that if you sign this, in effect, you're giving up other computations? And second, do you agree with him that he potentially, by not getting the notice of deficiency, is arguably in a lesser position to make certain arguments because he can't get back in front of the tax court? Well, I don't agree with his position. Let's take the settlement off the table for one minute. Suppose there had been none of this settlement discussions at all. So this is off the table. You simply have the FPAA and the default, which means the FPAA adjustments become final. It's our position that in that circumstance he's not entitled to a notice of deficiency because there are no partner-level factors. There are no affected items requiring partner-level determinations. The only the FPAA entirely determined this case when it disallowed, when it disregarded the partnership, it treats the tax shelter as a sham, and the consequences since all transactions with acquisition are disregarded, then the transaction pursuant to which this PT partnership. Now, I know that's your second position, but that's really not addressing my question, which is the scope and effect of this settlement, this settlement affirmation, the numbers. Well, I sort of think it did address the argument because if he's not entitled to a notice of deficiency, then he's not being deprived of any argument. Let's just say we disagreed with you on that, Betty, that just for talking purposes. Right. Maybe he was entitled to it, that there were partnership-level determinations. I take it your fallback argument as well, he doesn't need it because he actually admitted to the numbers and then they just flow through. So my question is, well, what's the practical effect of this notice of election? If he's entitled to a notice of deficiency, does this, in effect, kind of sweep that out from under him? Well, I guess perhaps it does. I mean, certainly that would happen. Because that's a kind of a vague standard for us to go on. I mean, that seems to be one of the arguments, so I'm just trying to figure out. Well, the Federal Circuit in both Olson and Bush said once you stipulate to the numbers, then you're not entitled to a notice of deficiency. So we submit that that's an accurate determination. And taxpayers' position seems to be heads I win, tails you lose. I feel that he's using the provisions of the code to play games with. He concedes that, you know, he doesn't challenge the tax. He only challenges the penalties. But now he's come into court saying, you know, he doesn't he doesn't he has not stated any disagreement with the numbers. You know, he has never shown this court any basis, you know, for doing so. And I think the tax court got it right or the district court got it right when it said all these numbers were agreed to, and even if you don't buy that because the settlement fell through, this case is very differently situated from Napolillo, where the loss occurred at the partner level and factual determinations were required here. All the losses occurred at the partnership level, and there were no individual factual determinations that were required. You simply apply the taxpayer's proportionate share of the loss, or you take into account that these losses were disallowed at the partnership level. And so once the transactions didn't occur, he doesn't get the losses. And that's the beginning and the end of it. Roberts, I think there's some additional questions. Roberts, can you answer the second part of Judge McKeon's question, which was what's the procedural disadvantage of not being able to go, to get the notice of deficiency and go through that proceeding in the tax court, as opposed to having to take the route that he did here? He says that he lost some advantages there, and what's your response to that? Well, I don't know what advantages he lost. He's always been very vague. He always his argument has been there's a whole host of procedural arguments that he would have made. Had he gone to the tax court, he has never explicitly enunciated what they were. But when Congress enacted the tougher partnership procedure, they restricted the right to go to the to get a notice of deficiency, and they did that because you have an FPAA. And the taxpayer could have challenged the FPAA. He received notices of the FPAA. He could have chosen to challenge the determinations in the FPAA, disregard treating all the options transactions as sham and disregarding acquisitions. He didn't do it. So he had a procedure in which the FPAA, he could have, you know, challenged the FPAA. Sotomayor, thank you. Thank you. Mr. Robbins, you're out of time, but I'm going to give you some rebuttal time. I'll give you two minutes. Thanks. I appreciate that. I won't take more than that. I'm starting to think the government doesn't understand this transaction. The losses did not occur at acquisitions. That is obvious. The losses occurred at the P.T. partnership, this P.T.R.P.N.1. The first loss was when the Canadian dollars trickled down from acquisitions with this outrageously inflated basis. And I will say we have never defended this son-of-a-boss transaction. It's bogus from top to bottom. These Canadian dollars land in the P.T. partnership with some outrageous basis, and they exchange it for U.S. dollars at a fair market value, sell it for dollars, and they have a huge loss. Okay? That's loss number one. That's at the P.T. level. Loss number two, there's even, there is some substance to loss number two in that the resort and all of this, all these debt instruments are transferred to the Hilton, whatever the name of it is, partnership, where they sit there and the basis in that partnership is jacked up through this son-of-a-boss transaction. The basis, the P.T. partnership's basis in the Hilton partnership is huge as a result of this son-of-a-boss bogus basis jack-up. So when P.T. partnership walks away from the deal and leaves behind the resort properties and is discharged from its indebtedness on all of these notes to the tune of about $30 million, the cancellation of debt income that otherwise would have landed on P.T. and then landed on Gosnell is offset by this inflated basis. So that's the second transaction. That does not occur at acquisitions. That occurs at P.T. So I don't know what the argument – I think Your Honor has got it. The argument is, is that he conceded. That's where this case boils down to. Thank you. Thanks. Thank you both for your arguments this morning. Gosnell v. The United States is submitted.
judges: Duffy, McKeown, Watford